IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Criminal No. 4:21-cr-149 |
| v. | ) |
| | ) GOVERNMENT'S SENTENCING |
| DUSTIN JAMES ORTIZ | ) MEMORANDUM |
| | ) |
| Defendant. | ) |

COMES NOW the United States of America, by its undersigned counsel, and provides the following memorandum for the sentencing in this matter.

**Table of Contents**

Introduction …………………………………………………………………………..1

A two-level enhancement for aggravated role should apply………………………….2

A two-level enhancement for vulnerable victim should apply………………………..7

Section 3553(a) Factors……………………………………………………………...10

I.  **Introduction**

On February 23, 2021, the defendant entered pleas of guilty to conspiracy to wrongfully obtain and disclose individually identifiable health information, in violation of Title 18, United States Code, Section 371, and Title 42, United States Code, Section 1320d-6(a)(2),(3), (b)(3) (count 1); and wrongfully obtaining individually identifiable health information, in violation of Title 42, United States Code, Section 1320d-6(a)(2), (b)(3), and Title 18, United States Code, Section 2. (count 4). Pursuant

1

to plea agreement, the government will move to dismiss count 5 at time of sentencing. The government will seek the restitution in the amount of $2,919.76. (PSR ¶ 41).

The issues for sentencing are: (1) whether a two-level enhancement aggravated role (USSG 3B1.1) should apply; (2) whether a three-level enhancement for vulnerable victim (USSG 3A1.1) should apply; and (3) an appropriate sentence taking into account factors under Title 18, United States Code, Section 3553(a). The presentence investigation report (PSR) computes the advisory sentencing guidelines range as 12 to 18 months' imprisonment. (PSR ¶ 119). If the Court applies the enhancements requested herein, the range would be 24 to 30 months' imprisonment.

**II.  A two-level enhancement for aggravated role should apply.**

Defendant recruited co-defendant Wilkerson, then an employee of the Veteran Affairs Medical Center (V.A.M.C.) in Des Moines, in his plan to obtain the mental health records of M.S.[1] for personal gain and malicious harm. (PSR ¶¶ 10, 19, 20, 21, 22, 23, 25, 26 37). Defendant planned the criminal offenses and was the only one who stood to "benefit" therefrom.

Section 3B1.1(c) provides for a two-level enhancement "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b)." In considering whether a defendant should receive a role adjustment as a manager or supervisor, the court should consider:

---

[1] Identity known but redacted. Additionally, M.S. has had a change of last name since the inception of this case, but for continuity and to protect the victim, the government will use herein the initials M.S.

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*United States v. McDonald*, 521 F.3d 975, 979 (8th Cir. 2008) (quoting U.S.S.G. § 3B1.1, app. n. 4). In *McDonald*, a two-level role enhancement was properly assessed to a defendant over his girlfriend, who also participated in the robbery, based upon his conduct in acquiring a getaway vehicle, choosing the bank, asking her to enter the bank to look for police, hold the door open, and his control of the proceeds. *Id*.

The simple recruitment of a conspirator and setting a conspiracy in motion is sufficient for an aggravating role. *United States v. Zimmer*, 299 F.3d 710, 719-20 (8th Cir. 2002). The leader need not exercise direct influence or control over the coconspirator. *Id*. The Eighth Circuit construes the term manager liberally. *United States v. Anwar*, 880 F.3d 958, 972 (8th Cir. 2018). A person need only manage or supervise one participant in a conspiracy. *Id*. The enhancement may apply in the event of a single transaction. *Id*. But the defendant "must direct or enlist the aid of others." *Id*. (cleaned up). In *Anwar*, a role enhancement was properly found where a defendant recruited another person to be his "partner" and recruited store owners to sell the synthetic drugs that were a part of the criminal conspiracy. *Id*.; *See also*, *United States v. McSmith*, 968 F.3d 731, 736-37 (8th Cir. 2020) (defendant directing others to distribute drugs was a "manager" under 3B1.1). It is irrelevant whether a defendant has no "affirmative intent" to be a leader in the conspiracy. *United States v. House*, 923 F.3d 512, 517-18 (8th Cir. 2019). Reaping the benefits of the criminal

3

scheme is indicative of an aggravating role. *United States v. Mickle,* 464 F.3d 804, 807 (8th Cir. 2006) (organizer or leader properly applied to defendant who recruited accomplices, planned the offense, and received a substantial share of the proceeds).

The unobjected to facts contained within the PSR firmly support this enhancement. Defendant was unhappy with M.S.' support of S.W., the mother of his two children. (PSR ¶¶ 31, 32). Defendant had been physically abusive of S.W. (PSR ¶¶ 31, 32). M.S. was a friend to S.W., helped her with childcare, and provided a safe place to stay. (PSR ¶¶ 31, 36). One of the instances of Defendant's physical abuse of S.W. resulted in a criminal conviction for domestic abuse assault impeding flow of air or blood. (PSR ¶ 64). Subsequent harassment of S.W. resulted in two contempt findings and imprisonment, for which he is presently in custody. (*Id.*).

Defendant believed that M.S. turned S.W. into "Section 8" housing because Defendant stayed with S.W. four to five times a week. (PSR ¶ 15). Defendant told law enforcement that this situation led to a physical altercation between he and S.W. (*Id.*). Defendant attributes the altercation, police involvement, subsequent loss of his job, and the inability to see his children, to M.S. (*Id.*).

Motivated to cause malicious harm to M.S. as a result of this, M.S.' support of S.W., and to personally gain in his relationship with S.W. and his custody situation, Defendant hatched a plan to obtain and disclose M.S.' records documenting her mental health condition. (PSR ¶¶ 9, 10, 11, 13, 14, 15, 17, 32, 33, 36, 37, 38, 40).

By December 2020,[2] Defendant contacted Wilkerson after a period of fifteen

---

[2] It is anticipated Wilkerson will testify Defendant initiated contact with her in November 2020.

years of no contact. (PSR ¶¶ 16, 20). Defendant learned that Wilkerson had access to patient health information and asked her for information concerning Wilkerson's mental health condition and medications. (PSR ¶¶ 19, 21). Defendant ployed Wilkerson with claimed concerns about his children's welfare who were in the care of M.S. (PSR ¶¶ 16, 21, 22). Defendant worked up to asking for the medical records and finally on February 22, 2021, Wilkerson relented and printed out 4 pages of mental health records of M.S. from the V.A. Medical Center records to which she had access because of her employment at that time. (PSR ¶¶ 10, 22, 23). At Defendant's request she delivered the records to him. (PSR ¶ 23). Wilkerson received no compensation from Defendant and felt manipulated by him. (PSR ¶ 23).

Since her initial statement to law enforcement in March 2021 (PSR ¶¶ 18-27), Wilkerson has proffered concerning the details of her interactions with Defendant. It is anticipated she will testify at sentencing shedding light on Defendant's role in the offense over her based upon his recruitment of her, his planning of the offense, and the lack of any "benefit" to anyone other than Defendant.

Simply put, Defendant's role in recruiting Wilkerson and convincing her to commit the crime that benefitted only him, is actually more of an aggravated role than that assessed a drug dealer who recruits a driver, who at least derives some benefit. The PSR indicates it did not assess an aggravated role in the offense because "there is no information that Ortiz exercised control or managerial responsibility over Wilkerson." (PSR, at 37). Respectfully, this is an over-simplified view of USSG § 3B1.1. Defendant procured the assistance of Wilkerson who was in a position to

5

help commit the crimes charged. Over months, he recruited her talking her into committing these offenses until the day she broke and obtained and delivered the health records of M.S. to Ortiz at his home. Ortiz developed the criminal plan to obtain and disclose these records and was the sole person seeking to benefit from the crime. Defendant should clearly be assessed a role in the offense enhancement for his role in the offense over Wilkerson in the conspiracy to commit the offenses of wrongfully obtaining and disclosing individually identifiable health information (count 1) and wrongfully obtaining individually identifiable health information (count 4).

Should the Court determine the role in the offense enhancement does not apply the government respectfully seeks an upward variance to account for this conduct as a Section 3553(a) factor.

### III. A two-level enhancement for vulnerable victim should apply.

M.S. was a vulnerable victim. She suffered of the mental conditions--anxiety and PTSD. (PSR ¶¶ 10, 14). Defendant knew that M.S. had the conditions of anxiety and PTSD. (PSR ¶ 14). The whole point of Defendant's crimes was to obtain mental health records documenting M.S.' mental health conditions for the purpose of exploiting this information for his personal gain and to cause malicious harm. This is the very conduct USSG Section 3A1.1 is designed to address.

The government seeks the application of the vulnerable victim enhancement under 3A1.1(b)(1), which provides for a two-level enhancement "[i]f the defendant

6

knew or should have known that a victim of the offense was a vulnerable victim."[3] A "vulnerable victim" is defined as a person who is a victim of the offense including relevant conduct "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." USSG § 3A1.1, app. note 2. Additionally, Defendant must "know[] or should have known of the victim's unusual vulnerability." *Id*; *see also United States v. Pierre*, 870 F.3d 845, 849 (8th Cir. 2017). It is no longer necessary to establish that a vulnerable victim was "targeted" because of that status. USSG Amendment 521. Rather, the inquiry is whether the victim was in fact unusually vulnerable and the defendant knew or should have known of that fact. *United States v. Callaway*, 762 F.3d 754, 760 (8th Cir. 2014); *See, United States v. McClure*, 4:21-cr-067-RGE-SHL, Dkt. 41, 43 (applying vulnerable victim enhancement to minor children witnessing defendant firing shots in their mother's direction).

Whether a victim is unusually vulnerable and whether the defendant knew or should have known that is a "fact-based" inquiry. *United States v.* Beckman, 787 F.3d 466, 495 (8th Cir. 2015). Thus, in the Eighth Circuit, victims have been found to be vulnerable victims based upon mental conditions including reduced mental capacity[4] and bipolar and attention deficit disorder.[5] Anxiety and similar conditions have been

---

[3] The government's offense conduct statement (PSR, at 35) and objections (PSR, at 39) sought a three-level enhancement under USSG 3A1.1. The government previously informed defense counsel, when transmitting the plea agreement, that a two or three level enhancement for vulnerable victim under Section 3A1.1 would apply. At this time, the Government is seeking only a two-level enhancement under USSG Section 3A1.1(b)(1).
[4] *United States v. Betone*, 636 F.3d 384, 388 (8th Cir. 2011)
[5] *United States v. Hagen*, 641F.3d 268, 271 (8th Cir. 2011)

found to be mental conditions rendering someone unusually vulnerable. *United States v. Salahmand*, 651 F.3d 21, 23, 27 (D.C. Cir. 2011) (applying enhancement to victims with one or more of the following mental conditions including: anxiety, depression, ADHD, and adjustment disorder).

Post-Traumatic Stress Disorder (PTSD) is a type of anxiety disorder. <u>Mental Health and Substance Abuse, What are the Five Major Types of Anxiety Disorder</u>, U.S. Department of Health & Human Services, https://www.hhs.gov/answers/mental-health-and-substance-abuse/index.html (last visited 6/3/22). PTSD is a "mental health condition that's triggered by a terrifying event—either experiencing it or witnessing it. Symptoms may include flashbacks, nightmares and severe anxiety, as well as uncontrollable thoughts about the event." <u>Post-traumatic stress disorder (PTSD)</u>, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/post-traumatic-stress-disorder/symptoms-causes/syc-20355967 (last visited 6/3/22). Symptoms include one or more of the following: intrusive memories, avoidance, negative changes in thought or mood, and changes in physical and emotional reaction. *Id*. Certain triggers can "set off" PTSD, including sights, sounds, smells, or thoughts that remind one of the traumatic event. <u>What Are PTSD Triggers</u>, WebMD, https://www.webmd.com/mental-health/what-are-ptsd-triggers (last visited 6/3/22).

M.S. was an "unusually vulnerable" victim. M.S. suffered from PTSD due to military sexual trauma. (PSR ¶ 38). Defendant sought and obtained M.S.' mental health records documenting this which were maintained by V.A.M.C. in Des Moines. (PSR ¶¶ 9, 10). The records so obtained state that M.S. was diagnosed with anxiety

and PTSD. (PSR ¶ 10). The records state the PTSD was caused by the rape perpetrated upon M.S. while she was in the military. (*Id*.). Within 12 to 24 hours of receiving these four pages of these records, Defendant sent pictures of them to another person, S.W. for personal gain and to cause malicious harm. (PSR ¶¶ 9, 11, 14). Defendant admitted, and it is undisputed fact of the PSR, that he knew M.S. to have PTSD and anxiety. (PSR ¶ 14). He also admitted he sought the records documenting her mental health condition. (*Id*.).

Defendant's motives are discussed, *supra*, he described M.S. as a "great ally" to S.W. and a problem for him. (PSR ¶ 17). Defendant was unhappy with M.S. support of S.W. and threatened to "prove M.S. mentally unstable." (PSR ¶ 32). Defendant also threatened to show M.S.' records to others. (PSR. ¶ 33). Defendant committed the crimes of which he has been convicted for personal again and to cause malicious harm. Defendant intended to cause M.S. harm by obtaining and disclosing her mental health records maintained by the V.A.M.C. (PSR ¶ 40). He hoped to eliminate M.S. as a source of support to S.W. and to use M.S.' records as it related to the custody of the children he shared with S.W. (*Id*.).

It is anticipated that the testimony of Wilkerson will shed further light on Defendant's pursuit to obtain mental health information pertaining to M.S.

The two-level vulnerable victim enhancement clearly applies. M.S. was an unusually vulnerable victim due to her mental health conditions, which Defendant knew and which Defendant than sought to exploit, through the obtaining and disclosing of her mental health records, for his personal gain and to cause malicious

9

harm.

Should the Court determine the vulnerable victim enhancement does not apply the government respectfully seeks an upward variance to account for this conduct as a Section 3553(a) factor.

IV. **Section 3553(a) Factors**

The nature and circumstances of the offense are serious. 18 U.S.C. § 3553(a)(1). As set forth *supra*, the compromise of M.S.' privacy concerning her mental health treatment and conditions, a matter which should have been protected from disclosure by HIPAA, for the exploitation by Defendant of M.S. for the purpose of personal gain and malicious harm was egregious.

Defendant is 49 years of age. (PSR, at 4). Defendant has amounted a considerable criminal history from age 18 to now. (PSR ¶¶ 58-64). 18 U.S.C. § 3553(a)(1). Defendant's history consists of violence as fully detailed in the PSR. Defendant has convictions for robbery (2) (PSR ¶¶ 59, 63); willful injury causing serous injury (PSR¶ 60); and domestic abuse assault impeding flow of air or blood (involving S.W.) (PSR ¶ 64). Defendant has had significant difficulties complying with conditions of release and incarceration. (PSR ¶¶ 59, 60, 64).

Taking into account the advisory sentencing guidelines and all of the Section 3553(a) factors, a sentence of at least 30 months' imprisonment would be reasonable. It would reflect the nature and circumstances of the offense, the history and characteristics of the defendant, the need to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."

§ 3553(a)(2)(A). Such a sentence would provide adequate deterrence, protect the public, and "avoid unwarranted sentencing disparities." § 3553(a)(2), (6).

        Richard D. Westphal
        United States Attorney

By:    */s/ D. Scorpiniti*
      Debra L. Scorpiniti
      Assistant United States Attorney
      110 East Court Avenue, Suite 286
      Des Moines, IA 50309
      Tel: 515.473.9300
      Fax: 515.473.9292
      Email: debra.scorpiniti@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2022, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record by:
\_\_U.S. Mail \_\_\_\_\_ Fax \_\_\_\_\_Hand Delivery
\_x\_ECF/Electronic filing \_\_\_Other means

UNITED STATES ATTORNEY
By: /s/ *D. Scorpiniti*